UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BISMARCK ASARE, *et al.*,

    Plaintiffs,

        v.

LM-DC HOTEL, LLC, *et al.*,

    Defendants.

Civil Action No. 14-347 (JEB)

**AMENDED MEMORANDUM OPINION**

Plaintiffs Bismarck Asare, Antonio Brown, and Ana Velasquez worked in the front office of the Madison Hotel here in the District until January 2013, when the hotel's management changed hands and they were terminated. Aggrieved by this abrupt turn of events, Asare and his coworkers sued the owner of the hotel, the company that managed it while they worked there, and the one that took over in January 2013, claiming racial discrimination in violation of the D.C. Human Rights Act and 42 U.S.C. § 1981, as well as intentional and negligent infliction of emotional distress. Plaintiffs then amended their Complaint in April of this year to add to and strengthen their claims, and Defendants now move to dismiss. Although some of Plaintiffs' allegations are patently deficient, others pass the relatively undemanding Rule 12(b)(6) bar. As a result, the Court will grant Defendants' Motion in part and deny it in part.

**I.    Background**

Viewing the facts in the Amended Complaint as true, which is required at this stage, the Court finds that Bismarck Asare and Antonio Brown, both black males, and Ana Velasquez, a Hispanic female, were terminated from their employment at the Madison Hotel on January 29, 2013. See Am. Compl., ¶¶ 4-6. Each of the three Plaintiffs had worked at the Madison for at

1

least four years.  See id.  Defendant LM-DC Hotel, meanwhile, had purchased the hotel in November 2012, and it retained Defendant Destination Madison Management and, subsequently, Defendant Loews M-DC Operating Company – over which it had effective control – to manage operations.  See id., ¶¶ 8, 11-12.

Moving swiftly after the November purchase, Defendants worked together to institute a reorganization plan that would result in the termination of multiple black hotel employees, a process one Madison employee allegedly referred to as "get[ting] rid of all the trash."  Id., ¶¶ 12, 20.  Consistent with that goal, Plaintiffs were indeed fired, while certain white employees with less experience – including "several foreigners" – were retained and even promoted.  See id., ¶¶ 12, 15.  Asare was replaced by a white person from Germany, Velasquez by a white person from Spain, and Brown by a white person of unknown, possibly foreign, origin.  See id., ¶¶ 16-18.  Meanwhile, someone placed a poster in the break room that encouraged employees to "Party like a rockstar, work like a slave."  Id., ¶ 20.

Prior to the culmination of Defendants' purported scheme, Brown had complained in writing to a superior – though it is not clear precisely whom – about racial discrimination, and someone had complained at least once to the "management team" about the "trash" comments.  Id., ¶¶ 21-22  As a result of all of these slights, Plaintiffs filed this suit, ultimately – after amending their Complaint once – espousing a number of legal theories: (1) Defendants intentionally or negligently caused them emotional distress; (2) Defendants mistreated and ultimately fired them because of their race in violation of 42 U.S.C. § 1981 and the D.C. Human Rights Act; and (3) Defendants retaliated against Brown for activity that is protected under those same statutes.  Id., ¶¶ 24-39.  Defendants have now moved to dismiss all of those claims.

**II.    Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Plaintiffs must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). Although a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Plaintiffs claim in their Opposition that Defendants have converted their Motion to Dismiss into one for summary judgment by relying on a document that is attached to their Motion and is therefore outside of the "four corners" of the Complaint – namely, an operating agreement that governed LM-DC's relationship with the hotel and may inform the Court's analysis of whether LM-DC qualifies as Plaintiffs' employer. See Opp. at 4-5. As the Court ultimately agrees with Plaintiffs that LM-DC is a proper Defendant in this suit – even after considering the operating agreement – it need not linger over this dispute.

**III.    Analysis**

In moving to dismiss, Defendants offer even more arguments than Plaintiffs provided theories of liability – to wit: (1) Plaintiffs failed to state a claim for intentional or negligent infliction of emotional distress; (2) LM-DC should be dismissed from the suit because it was not Plaintiffs' employer; (3) Brown failed to state a claim for retaliation; (4) Velasquez failed to state a claim for race discrimination; and (5) the entire suit should be dismissed because Plaintiffs failed to properly serve Defendants.

In the course of briefing, Plaintiffs never address the negligent-infliction argument, and they essentially concede that their retaliation claim is deficient. See Opp. at 7-8 (discussing IIED but not NIED); id. at 9 (admitting that Brown's claims "should be more artfully plead [*sic*]" and asking only that the Court reserve judgment at this time). "[A] litigant has the obligation to spell out its arguments squarely and distinctly, or else forever hold its peace," Dinkel v. MedStar Health Inc., 880 F. Supp. 2d 49, 58 (D.D.C. 2012) (internal quotation marks omitted), so where a party "fail[s] to address . . . [certain] positions . . . , the Court will treat those claims as conceded." Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002). This is just such an instance.

Defendants, the Court notes, would prevail on both negligent infliction and retaliation even if Plaintiffs had not given up the ship. Negligent infliction, first, is a cause of action based on physical harm, and although "[a] plaintiff need not show actual physical impact" to prove that a defendant negligently caused her distress, "she must show that she actually feared for her [physical] safety as a result of [the defendant's] conduct." Hollis v. Rosa Mexicano DC, LLC, 582 F. Supp. 2d 22, 27 (D.D.C. 2008). Plaintiffs fail to make any allegation of physical danger – they do not argue, for example, that they feared for their safety on account of their supervisors' penchant for racial slurs. Nor have they satisfied the second *sine qua non* of the negligent-infliction cause of action: that Defendants' conduct was outrageous. See Minch v. District of Columbia, 952 A.2d 929, 941-42 (D.C. 2008). As a result, this claim fails.

The retaliation claim – pressed only by Brown – is similarly infirm for two reasons. First, Brown has not sufficiently alleged that he engaged in any protected activity, see Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 91 (D.D.C. 2006), pointing out nothing more than that he "complained in writing to Defendant about racial discrimination." Am. Compl., ¶ 21. Even if he had done so, moreover, his allegations do not allege anything approaching a causal connection between his internal complaint and his termination. See Gregg v. Hay Adams Hotel, 942 F. Supp. 1, 8 (D.D.C. 1996). All that is alleged is that Brown complained about discrimination in 2011, about a year and a half before his employment with the hotel came to an end. The temporal proximity between a discrimination complaint and an adverse employment action, however, must be "very close" to show a causal connection where no direct evidence is present. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing with approval cases finding three to four months too long to demonstrate causal connection).

Eighteen months is far too long of a delay, and, as a result, Brown could not prevail on his retaliation count.

Defendants, for their part, allowed that Plaintiffs have done enough to satisfy the federal service requirements. As a result, all that is still at issue are Defendants' arguments regarding intentional infliction of emotional distress, LM-DC's role in the terminations, and Velasquez's status as a Plaintiff in the case. The Court will address each in turn.

A.  Intentional Infliction of Emotional Distress

The Court begins with intentional infliction of emotional distress. IIED is a particularly narrow cause of action that applies only when the alleged tortfeasor's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and [is] regarded as atrocious, and utterly intolerable in a civilized community. Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982). Unsurprisingly, courts have been careful to restrict the reach of the doctrine. See Harvey v. Strayer Coll., 911 F. Supp. 24, 27 (D.D.C. 1996) ("[T]he law does not, and doubtlessly should not, impose a general duty of care to avoid causing mental distress."). After all, "in our own interest and that of society, we need the privilege of being careless whether we inflict emotional distress on our neighbors." Id. (quoting Clark v. Associated Retail Credit Men, 105 F.2d 62, 64 (D.C. Cir. 1939)). The allegations in Plaintiffs' Complaint – consisting solely of run-of-the-mill discrimination claims – fail even to approach this demanding standard.

To prevail on an IIED claim, Plaintiffs must prove: (1) extreme and outrageous conduct that (2) intentionally or recklessly (3) caused them to suffer severe emotional distress. See Duncan v. Children's Nat'l Med. Ctr., 702 A.2d 207, 211 (D.C. 1997). This standard does not become more relaxed merely because Defendants were Plaintiffs' employers. Indeed, if

6

anything, a plaintiff faces an even higher bar when suing his employer. See, e.g., Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 624, 628 (D.C. 1997) ("In the employment context, we traditionally have been demanding in the proof required to support an intentional infliction of emotional distress claim."). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Waldon v. Covington, 415 A.2d 1070, 1076 (D.C. 1980) (quoting Restatement (Second) of Torts § 46 (1965)).

All Plaintiffs have alleged here is that they were called "trash" on at least two occasions (apparently not even to their face), that an offensive poster appeared in their workspace, that they were fired from their jobs, and that they were replaced by non-minorities. Courts have repeatedly held that conduct more egregious than these "mere insults" and employment-related slights does not meet the exacting IIED bar. See, e.g., Kerrigan, 705 A.2d at 628 (no IIED where employer targeted plaintiff for sexual-harassment investigation, manufactured evidence, and leaked information about investigation to other employees); Hoffman v. Hill & Knowlton, Inc., 777 F. Supp. 1003, 1005 (D.D.C. 1991) (conduct not outrageous where employer stated false, pretextual reasons for dismissing employee and spread rumors about him); Crowley v. N. Am. Telecomm'ns Ass'n, 691 A.2d 1169, 1171-72 (D.C. 1997) (allegations that supervisor refused to include plaintiff in meetings, treated him in hostile manner, and eventually terminated him were insufficient as matter of law). The Court, accordingly, will dismiss Plaintiffs' IIED claim.

B.     LM-DC's Role

Defendants next contend that the claims against one of their lot, LM-DC, should be dismissed, as that entity was not actually Plaintiffs' employer and thus could not have discriminated against them. More specifically, they argue that LM-DC, which owns the hotel, contracts with Loews M-DC Operating company, LLC, to handle management. It is Loews, they

7

argue, that operates the hotel and that employed Plaintiffs when they worked there. See Mot. at 12 (citing Mot., Exh. A (Declaration of Eric Walnoha), ¶ 9 (describing the Hotel Management Agreement, which states that "[e]ach Hotel employee shall be the employee of [Loews]"). LM-DC, in contrast, they argue, does not make and never has made decisions regarding anyone's employment at the hotel, and so it is not a proper defendant in this case. Id.

This contention, however, is a step too far. There is no doubt that Plaintiffs' allegations regarding LM-DC's role are vague – they refer to LM-DC and Loews M-DC collectively in the Complaint, for example, see Am. Compl., ¶ 12 – but this can be chalked up to the confusing nature of the companies' relationship. Without the benefit of discovery – or even of the Hotel Operating Agreement – the Court cannot hold against Plaintiffs the fact that they conflated LM-DC and L(oews) M-DC, and it will therefore look past their failure to allege any particular facts to substantiate the argument that LM-DC was involved in the challenged employment decisions. In fact, the confusion suggests that discovery is appropriate, as it will allow Plaintiffs to clarify the argument, pled however inartfully in their Complaint, that LM-DC – the apparent owner of the hotel – participated in or ratified the decision to terminate Plaintiffs on the basis of their race. See Am. Compl., ¶¶ 3, 10-19.

The cases Defendants cite to support their argument on this front do not call that conclusion into question. Indeed, each stands only for the proposition that someone who is not involved in a plaintiff's employment cannot be held responsible for violating employment laws. The Court finds that observation uncontroversial as far as it goes, but none of the cases cited has anything to say about this specific situation – namely, where one Defendant was part of the same corporate structure as the direct employer and may have had some say – either contractual or *de facto* – in the challenged employment decisions. See Oland v. Forever Living Prods. Int'l Inc.,

8

No. 09-8039, 2009 WL 5128658, at *3 (D. Ariz. Dec. 17, 2009) (dismissing defendant as it "was not [plaintiff's] employer and thus cannot have violated the [relevant employment laws]"); Braun v. Rothschild Registry Int'l, No. 87-7743, 1990 WL 106814, at *2 (S.D.N.Y. July 27, 1990) (dismissing defendant because it "was not [plaintiff's] employer and was therefore the wrong defendant"). In fact, a defendant need not be the plaintiff's direct employer to be liable for discrimination if it participated in or ratified the discriminatory action. See, e.g., St. Jean v. Orient-Express Hotels Inc., 963 F. Supp. 2d 301, 307 (S.D.N.Y. 2013) (holding that "[t]he definition of 'employer' has been construed liberally for Title VII purposes and does not require a direct employer/employee relationship" and that Title VII claims do not turn on "whether the party may technically be described as an 'employer' . . . at common law") (internal quotation marks omitted). Plaintiffs insinuate that that may be the case here – that LM-DC directors may have worked for Loews as well, or that they may have had some power over final employment decisions, for example – so their claim against LM-DC may go forward.

### C. Velasquez

Defendants, finally, submit that Velasquez fails to state a plausible race-discrimination claim, as the Complaint refers primarily to discrimination against blacks, whereas Velasquez is Hispanic. See Mot. at 16 (citing Am. Compl., ¶¶ 12, 14, 20, 32). Plaintiffs' Complaint, however, does allege that Defendants treated their "non-white" employees in a discriminatory manner, see Am. Compl., ¶¶ 19-20, and it does identify sufficient facts to support the claim that Velasquez – and not just the black Plaintiffs – was herself the subject of discrimination on the basis of her race. See, e.g., id., ¶ 19 ("Defendants' purported 'reorganization' constituted a pretext for its intentional, racially biased termination of Plaintiffs and other non-White employees.") (emphasis added), ¶ 20 (hotel manager "stated that she was going to 'get rid of all

9

of the trash,' apparently referring to Plaintiffs and other terminated employees") (emphasis added). Clumsy references to "African Americans" or "blacks" do not change that fact. In other words, this is not a case, as Defendants would have it, where Plaintiffs "mention[ed] race, without factual allegations demonstrating that any discrimination was racially-motivated." Mot. at 16 (quoting Ndodji v. InterPark Inc., 768 F. Sup. 2d 264, 274 (D.D.C. 2011) (dismissing Section 1981 claim where plaintiff alleged mistreatment based on national origin and only mentioned his race)). Here, instead, Plaintiffs alleged facts to support a claim of racial discrimination and simply forgot to mention Velasquez's specific racial background in two discrete paragraphs. In these circumstances, she must be allowed to press her claim.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss in part and deny it in part. All three Plaintiffs may proceed against all three Defendants on their claims of racial discrimination under both the DCHRA and § 1981, but the Court will dismiss their negligent-infliction, intentional-infliction, and retaliation counts. A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 7, 2014

10